IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01508-PSF-PAC

KAY PERSICHITTE,

   Plaintiff,

v.

UNIVERSITY OF NORTHERN COLORADO,

   Defendant.

## ORDER ON MOTION TO DISMISS

This matter comes before the Court on Defendant's Motion to Dismiss (Dkt. # 14), filed January 31, 2006. Defendant University of Northern Colorado ("UNC") moves the Court to dismiss Plaintiff Kay Persichitte's claim pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The motion is fully briefed and ripe for determination.

## I. BACKGROUND AND ASSUMED FACTS

UNC hired Dr. Kay Persichitte in approximately August of 1994 as an associate professor. In May of 1999, Dr. Persichitte was promoted to the Department Chair of Educational Technology at UNC. Am. Compl. at ¶ 6. The previous Department Chair was Edward Caffarella. While Dr. Caffarella was on sabbatical and near the end of his term as Chair, Dean Eugene Sheehan appointed Associate Professor Jeff Bauer to temporarily assume Department Chair duties. *Id.* at ¶ 13. After Dr. Caffarella's return,

he shared his concerns with Dean Sheehan regarding Dr. Bauer's performance, prompting Dean Sheehan to remove Professor Bauer and appoint plaintiff as Department Chair. *Id.*

Dr. Persichitte further alleges that Professor Bauer and his colleague, Assistant Professor Jim Gall, were embarrassed and humiliated that Professor Bauer had been replaced by a woman. *Id.* at ¶ 14. She contends that because the two professors were passed over for the promotion in favor of a female, they "began a long reign of" intimidating and harassing her. *Id.* Dr. Persichitte also alleges that the harassment and intimidation were based solely on her gender. *Id.* at ¶ 30. She claims that she complained to her supervisor, Dean Sheehan, about the harassment and intimidation, who allegedly told her that UNC would handle the personnel issues and she was to not engage Professors Bauer and Gall. Pl. Resp. at ¶ 7; *see also* Am. Compl. at ¶¶ 15-16.

In March of 2003, Dr. Persichitte began looking for a new job because of the "unbearable" situation. *Id.* at ¶ 18. She alleges that in July of 2003, Professors Bauer and Gall contacted various media outlets and accused her of misusing tax dollars and UNC funds. *Id.* at ¶ 19-20. In that same month, Dr. Persichitte was at Denver International Airport ("DIA"), returning from a Hawaii conference, when she was approached by a Fox News reporter. The reporter accused plaintiff of being involved in the misuse of tax dollars and taking a vacation at taxpayer expense. *Id.* at ¶ 19; Pl. Resp. at ¶ 16. Dr. Persichitte claims that Professors Bauer and Gall were

2

responsible for this media attention and that they "boasted that they had caused the confrontation by contacting Fox News, the UNC student newspaper, the Greeley Tribune, the Windsor Beacon, the Ft. Collins Coloradoan, several Colorado legislators and other agencies, to report certain claims concerning the Plaintiff, all of which were untrue." *Id.* at ¶ 20. The stories were allegedly reported for months, with the Fox News story in particular airing for three nights over a two-week period.

UNC allegedly told plaintiff that it would conduct an internal audit and investigation of the allegations, and the United States Department of Education would conduct "a federal audit." *Id.* at ¶ 21. Dr. Persichitte claims that UNC instructed her to comply with all investigative requests and "not to make any public statements in her defense." *Id.* Plaintiff claims she has never violated any UNC policy, rule or ethical standard. Further, although she has requested the findings of all internal and external investigations, none have been provided to her. *Id.* at ¶ 23.

On August 8, 2003, Dr. Persichitte resigned from UNC, which she claims she was forced to do. *Id.* at ¶¶ 6, 26; Ex. A to Def. Mot. Dis.; Def. Reply at 5. Months after her resignation, the *Greeley Tribune* ran a front-page article on November 19, 2003, referencing plaintiff and the alleged misuse of state funds. Pl. Resp. at ¶ 12. Plaintiff alleges that UNC provided information to the newspaper for the story, knowing that she had done nothing wrong. *Id.*

Plaintiff further contends that on April 6, 2004, the UNC Department of Educational Technology accused her of misappropriation of funds, and sometime in the

3

spring of 2004 sent plaintiff a letter demanding reimbursement for funds used to reserve a conference setting without any factual basis for making such a demand eight months after her departure.  *Id.* at ¶ 13.  Also that spring, on April 9, 2004, Professor Gall made a formal complaint concerning her alleged misuse of state funds to the Association for Educational Communications and Technology ("AECT") Ethics Committee, and while UNC allegedly knew she did nothing wrong it did nothing about the baseless complaint.  *Id.* at ¶ 14.  A few days later, on April 13, 2004, Professor Gall allegedly sent an e-mail to the department heads in the Educational Technology Department at UNC, to Dean Sheehan, and to her current dean and department head at the University of Wyoming describing the allegations of misuse of state funds.  *Id.* at ¶ 15.  Dr. Persichitte claims that on November 21, 2005, Professor Gall showed the Fox News tapes featuring the DIA interview from July of 2003 to his class while discussing illegal and unethical behavior.  *Id.* at ¶ 16.  Finally, she alleges that a website registered to Professor Gall shows the Fox News reports and mentions plaintiff by name and is currently operating.  *Id.* at ¶ 17.

After filing a charge of sex discrimination with the EEOC on September 10, 2004 (Ex. B to Def. Mot. Dis.) and receiving notice of her right to sue on May 5, 2005, plaintiff filed her original complaint on August 8, 2005.  She filed an amended complaint on October 6, 2005.  Dr. Persichitte brings claims for sex discrimination and retaliation against UNC under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.  She seeks an injunction against UNC, enjoining it from engaging in any employment

practice which discriminates on the basis of sex, as well as compensatory and punitive damages and other costs and fees.

UNC moves, pursuant to F.R.Civ.P. 12(b)(6), to dismiss plaintiff's complaint for failure to state a claim. Specifically, UNC claims that the alleged discriminatory adverse employment actions occurring prior to November 18, 2003 (the date defendant claims is the 300th day before the filing of plaintiff's EEOC charge) are time-barred. Additionally, UNC claims that plaintiff has failed to allege an adverse action for either her claim of discrimination or retaliation.

## II. ANALYSIS

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In ruling on a motion to dismiss, a court "must construe the complaint in favor of the complaining party," *Utah v. Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998), and must draw all reasonable inferences in favor of the plaintiff. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976). The Court will dismiss a claim for failure to state a claim upon which relief can be granted pursuant to F.R.Civ.P. 12(b)(6) only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Maher v.*

*Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998), or when an issue of law is dispositive.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

### B.  Whether Plaintiff's Discrimination Claim is Time-Barred

Title VII requires plaintiffs to exhaust administrative remedies prior to bringing federal court discrimination claims.  *Jones v. Runyon*, 91 F.3d 1398, 1399-1401 (10th Cir. 1996), *cert. denied*, 520 U.S. 1115 (1997).  Under Title VII, the administrative charges must be filed with the EEOC within 300 days after the date of the alleged discrimination.  *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir. 1993) (citing 42 U.S.C. § 2000e-5(e)).  This filing is a prerequisite to a civil lawsuit under Title VII.  *Aronson v. Gressly*, 961 F.2d 907, 911 (10th Cir. 1992).  In other words, an employee seeking to recover for acts of alleged discrimination, with respect to which she first filed a discrimination charge with the appropriate agency, may only recover for those discrete discriminatory acts occurring within 300 days of the date that the employee filed her charge with the EEOC.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

On this basis, UNC contends that Dr. Persichitte's claims are time-barred to the extent she alleges adverse employment actions occurring before November 18, 2003, which is 300 days prior to her filing of the EEOC charge on September 10, 2004.[1]  Def. Mot. at 3.  Dr. Persichitte, however, claims that an employer can be liable for

---

[1] Defendant inexplicably uses the date of September 20, 2004 as the date plaintiff filed her EEOC charge.  However, the charge itself shows a date of September 10, 2004, which the Court assumes to have been the filing date for purposes of this motion.

6

alleged discriminatory acts occurring outside the statutory 300 day window under the "continuing violation doctrine." Pl. Resp. at 8.

The Court first notes that the cut-off date should be November 14, 2003, rather than November 18, 2003. As noted, it appears plaintiff filed her EEOC charge on September 10, 2004 (Ex. B to Def. Mot. Dis.). Three hundred days prior to September 10, 2004 is November 14, 2003. Therefore, the Court will use November 14, 2003 as the appropriate date for evaluating whether plaintiff's claims are time-barred.

The case law cited by plaintiff in support of her "continuing violation" position predates the Supreme Court's decision in *Morgan*, in which the Supreme Court held that the continuing violation doctrine is not permitted for claims involving discrete acts of discrimination or retaliation. 536 U.S. at 113-14. The Tenth Circuit has recognized *Morgan*'s rejection of the continuing violation doctrine. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (stating that *Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the rule that each discrete incident of such treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted).

Although *Morgan* allows a plaintiff to partly base her suit on individual acts that occurred outside the Title VII statute of limitations when bringing a hostile environment claim, 536 U.S. at 117, such a claim has not been explicitly brought by the plaintiff here. Am. Compl. at ¶¶ 27-35. The discrete incidents alleged by Dr. Persichitte,

therefore, must each meet the administrative exhaustion requirements.  *See Morgan*, 536 U.S. at 113 (discrete discriminatory acts are not actionable unless filed within the statutory time period, even if related to acts alleged in timely filed charges).  Thus, any alleged incident of discrimination or retaliation that occurred prior to November 14, 2003 is time-barred.[2]

### C. Whether Plaintiff has Alleged an Adverse Employment Action

#### 1. Plaintiff's Discrimination Claim

For plaintiff's discrimination claim to go forward, she must allege an adverse employment action that occurred on or after November 14, 2003, more than three months after she ended her employment with UNC.  *See Morgan*, 536 U.S. at 113 (only alleged discriminatory acts for which an EEOC charge is filed within 300 days are actionable); *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (setting forth the *prima facie* elements of a discrimination claim, including alleging an adverse action).  Defendant contends that none of the alleged events that occurred within the relevant time period constitute adverse employment actions.  Def. Reply at 3-4.  Specifically, UNC claims that Dr. Persichitte cannot show that any of the claimed acts of discrimination "resulted in a significant change in employment status."  *Id.* (citing

---

[2] The Court notes *Morgan*'s instruction that the statutory time limitation is subject to equitable doctrines such as tolling or estoppel, and that "[c]ourts may evaluate whether it would be proper to apply such doctrines, although they are to be applied sparingly."  536 U.S. at 113.  Here, plaintiff advances no basis for applying such a doctrine and the Court does not find such a basis where plaintiff alleges that the discrimination began following her promotion in May of 1999 and she did not file a claim until September 10, 2004, more than five years later and more than a year after her resignation.

*Sanchez,* 164 F.3d at 532 (defining "adverse employment action"). Further, plaintiff allegedly cannot show an adverse employment action because there was no employment relationship between UNC and Dr. Persichitte during the relevant time period. Def. Mot. at 3.

Although plaintiff was no longer an employee during the relevant period, Title VII prohibits unlawful employment discrimination against "any individual," 42 U.S.C. § 2000e-2(a)(1), which could arguably include a former employee. Indeed, the Tenth Circuit has held that in the context of retaliation, "employee" in 42 U.S.C. § 2000e-3(a) includes former employees. *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996). However, the Court's reasoning in *Berry* depended on the nature of a retaliation claim, as opposed to a discrimination claim. *See also Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (finding that the term "employee" in the antiretaliation provision of Title VII includes former employees in light of "a primary purpose of antiretaliation provisions: Maintaining unfettered access to statutory remedial mechanisms").

Further, the Supreme Court's recent pronouncement in *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006) is instructive. In *Burlington Northern*, the Supreme Court distinguished between the discrimination and retaliation provisions of Title VII, noting that "differences in the purpose of the two provisions . . . justify this difference of interpretation." 126 S. Ct. at 2414 (holding that the Title VII retaliation provision, unlike its discrimination provision, is not limited to an employer's employment-related or workplace actions). These cases suggest that a similar

interpretation of "individual" to include a former employee complaining about acts occurring after her employment is not cognizable under § 2000e-2(a). Plaintiff cites no case law to the contrary.

Moreover, the remaining text of § 2000e-2(a) supports a finding that plaintiff has failed to state a claim for discrimination under Title VII. The provision prohibits any unlawful discrimination "against any individual *with respect to his compensation, terms, conditions, or privileges of employment.*" 42 U.S.C. § 2000e-2(a)(1) (emphasis added); *see also Burlington Northern*, 126 S. Ct. at 2411-12 (noting the same statutory language as limiting the scope of the discrimination provision, as opposed to the retaliation provision, which does not contain "such limiting words"). Here, the alleged acts of discrimination that occurred on or after November 14, 2003 could not affect her compensation, terms, conditions or privileges of employment, as she was not employed by the defendant. This does not mean that such alleged actions are immune from all conceivable Title VII liability; however a discrimination claim has not been stated. *See Burlington Northern*, 126 S. Ct. at 2414 (finding discrimination and retaliation provisions of Title VII are not coterminous, and the scope of the retaliation provision "extends beyond workplace-related or employment-related retaliatory acts and harm").

### 2. Plaintiff's Retaliation Claim

A *prima facie* case for retaliation is stated where a plaintiff can show that she engaged in protected opposition to discrimination, the defendant subsequently subjected her to an adverse employment action, and a causal connection exists

between the two. *Sanchez*, 164 F.3d at 533. UNC does not challenge the first prong of the *prima facie* case, that plaintiff engaged in protected opposition to discrimination. Indeed, plaintiff has pled such protected opposition by alleging that she "immediately and repeatedly complained to her supervisor" about the gender-based discriminatory incidents she alleges. Am. Compl. at ¶ 15; *see also* 42 U.S.C. § 2000e-3(a) (barring retaliation by any employer when an employee has opposed any unlawful employment practice). Rather, defendant again claims that plaintiff cannot meet the adverse employment action requirement "because she had no employment status with UNC" during the relevant time period. Def. Reply at 6. However, as discussed above, the analysis is different for retaliation claims.

First, the Supreme Court has specifically held that "employee" as used in the retaliation provision of Title VII includes former employees. *Robinson*, 519 U.S. at 346. Further, under *Burlington Northern*, the retaliation provision is not limited to prohibiting workplace or employment-related actions, and includes actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." 126 S. Ct. at 2409.

Here, Dr. Persichitte has alleged an adverse action for purposes of her retaliation claim where she contends that defendant disseminated false or misleading information about her to a newspaper which wrote a story describing her alleged misuse of state funds, accused her of misappropriation of funds, and baselessly demanded reimbursement. *See* Pl. Resp. at ¶¶ 12-13. Such alleged actions "could

well dissuade a reasonable worker from making or supporting a charge of discrimination" for purposes of a motion to dismiss. *Burlington Northern*, 126 S. Ct. at 2409. Further, such assertions if proven could "carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1239 (10th Cir. 2004) (explaining adverse actions in context of a retaliation claim and including "a false accusation of criminal charges or a negative letter of reference" as examples of such actions).

Additionally, plaintiff may have stated a claim for the alleged actions taken by Professor Gall within the relevant period, if such actions are attributable to Defendant UNC. UNC claims that plaintiff "does not allege that the behavior of Professors Gall and Bauer was that of management." Def. Reply at 6. However, plaintiff alleges in her Amended Complaint that UNC is responsible for the actions of Professors Gall and Bauer and Dean Sheehan as they were acting within the course and scope of their employment and are employees and agents of UNC. Am. Compl. at ¶ 8. Plaintiff also claims that she has repeatedly complained to UNC about the actions of Professors Gall and Bauer, and that UNC failed to take appropriate action. Pl. Resp. at ¶¶ 17-19; *see English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1011 (10th Cir. 2001) (defendant employer may be held liable for a subordinate employee's prejudice, even where manager lacked discriminatory intent, if plaintiff shows that manager or decisionmaker followed biased recommendations of a subordinate without independently investigating the complaint against the employee). At the pleading stage, when alleged facts

generally must be assumed to be true, such a claimed agency relationship will be accepted for purposes of construing a motion to dismiss. Additionally such alleged knowing acquiescence by UNC in these circumstances may arguably be tantamount to fostering discrimination by inaction or under a "cat's paw" theory. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1229, 1231 (10th Cir. 2000).

Therefore, plaintiff's retaliation claim survives defendant's motion to dismiss to the extent that the alleged actions occurred on or after November 14, 2003 and are attributable to UNC. The Court also notes that the acts alleged prior to November 14, 2003 may potentially be relevant "background evidence in support of [plaintiff's] timely claim." *Morgan*, 536 U.S. at 113.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss (Dkt. # 14). Plaintiff's discrimination claim is dismissed in its entirety, and plaintiff's retaliation claim remains as to acts occurring on or after November 14, 2003.

DATED:  September 27, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Court Judge